[Civ. No. 3921.   First Appellate District, Division One.—November 18, 1921.]

WILLIAM F. HARLAN, Respondent, v. HARRY E. ALDERSON et al.; Members of the Board of Medical Examiners, etc., Appellants.

[1] PHYSICIANS AND SURGEONS — PRACTICE OF OSTEOPATHY — MISCONDUCT—REVOCATION OF LICENSE—STATE MEDICAL LAW.—A person granted a reciprocity certificate to practice osteopathy by the board of medical examiners, who writes prescriptions and performs both minor and major surgery and engages in the practice of medicine and surgery, is guilty of misconduct warranting the revocation of his license under subdivision 14 of the act of 1913 (Stats. 1913, c. 354).

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Reversed.

The facts are stated in the opinion of the court.

Harry A. Encell and Frank M. Smith for Appellants.

Frank M. Carr for Respondent.

KERRIGAN, J.—This is an appeal from a judgment annulling on *certiorari* a certain order of the board of medical examiners revoking respondent's license to practice as a doctor of osteopathy in the state of California.

In the month of May, 1916, the respondent William F. Harlan was granted a reciprocity certificate from another state to practice osteopathy in the state of California by the board of medical examiners of the state of California. Thereafter, early in the year 1920, proceedings were initiated before the state board of medical examiners by a verified complaint against the respondent, charging him with a violation of the ninth subdivision of section 14, chapter 354, Statutes of 1913, page 734 (as amended by the Statutes of 1915 [page 196], 1917 [page 109], and 1919 [page 1296]) of the state of California. That complaint alleges that William F. Harlan was on or about the fourth day of May, 1916, licensed by the state board of medical examiners "as a drugless practitioner." With the complaint he was served with a citation directing him to appear at a certain time and place to show cause why the license and certificate theretofore issued to him to "practice as a drugless practitioner in the state of California" should not be revoked. In due time, by a verified answer, William F. Harlan denied the charges contained in the complaint and denied that he was licensed as a drugless practitioner, but, on the contrary, alleged that he was licensed by said board of medical examiners to practice osteopathy in the state of California.

The uncontradicted evidence introduced at the hearing showed that the respondent wrote prescriptions and performed both minor and major surgery and engaged in the unlimited practice of medicine and surgery.

[1] The question presented here is whether or not the case falls within the provisions of subdivision 9 of section 14 of the act of 1913, which provides what shall constitute misconduct which shall warrant the board of medical exam-

iners in revoking a license granted under the provisions of this act and which reads as follows:

"Ninth—The use, by the holder of a 'drugless practitioner certificate,' of drugs or what are known as medicinal preparations, in or upon any human being, or the severing or penetrating by the holder of said 'drugless practitioner certificate' of the tissues of any human being in the treatment of any disease, injury, deformity, or other physical or mental condition of such human being, excepting the severing of the umbilical cord."

We think it does so fall. Prior to 1901 licenses to practice medicine were issued to members of the medical profession by separate boards of examiners representing the schools of medicine then recognized in this state. In 1901 (c. 51, Stats. 1901, p. 56), a combined board of examiners consisting of five members from the Medical Society of the State of California, two members from the California State Homeopathic Medical Society, and two members from the Eclectic Medical Society of the State of California, was provided for and empowered to issue certificates to practice medicine and surgery. Chapter 99 of the Statutes of 1901, page 113, enacted by the same legislature as the chapter just referred to, provided for a board of examiners from the Osteopathic Association of the State of California, which was empowered to license persons to practice osteopathy in this state. Under the provisions of chapter 212 of the Statutes of 1907, page 252, the osteopathic board was abolished and two osteopaths were added to the board of medical examiners, which was then empowered to issue licenses to (1) physicians and surgeons, (2) osteopaths, and (3) persons to "practice any other system or mode of treating the sick or afflicted not referred to in this section."

The act of 1913 (c. 354, Stats. 1913), which, with some subsequent amendments, is the act now in force and under which the respondent's license was granted and subsequently revoked, continues the combined board provided for in the act of 1907, but provides for only two classes of certificate: "First, a certificate authorizing the holder thereof to use drugs or what are known as medical preparations in or upon human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions, which certificate shall be

designated 'physician and surgeon certificate'; second, a certificate authorizing the holder thereof to treat diseases, injuries, deformities, or other physical or mental conditions without the use of drugs or what are known as medicinal preparations and without in any manner severing or penetrating any of the tissues of human beings except the severing of the umbilical cord, which certificate shall be designated 'drugless practitioner certificate.' '' It also provides for the issuance of "reciprocity certificates," which provision was in 1915 (Stats. 1915, c. 105, sec. 11, page 191), amended [section 13] to read (in part): "The applicant shall produce a certificate entitling him to practice a system or mode of treating the sick or afflicted, as provided in this act or any preceding practice act of the State of California. . . . '' The reciprocity certificate to practice osteopathy issued to the respondent was issued on the basis of a license secured by him in the state of Missouri in May, 1904, which must have been based upon qualifications equal to those required by our act of 1901 (c. 99, *supra*). Manifestly, such certificate could confer no greater power or privilege than was granted to an osteopath by the last-mentioned act, section 9 of which provides (Stats. 1901, p. 115): "The system, method, and science of treating diseases of the human body, commonly known as osteopathy is hereby declared not to be the practice of medicine or surgery, within the meaning of an act entitled 'An act to regulate the practice of medicine in the State of California approved April third, eighteen hundred and seventy-six, or any of the acts amendatory thereof.' ''

The well-settled definitions of osteopathy, both in the decisions and in dictionaries, uniformly hold that the system of osteopathy "uses no drugs." "It administers no drugs; it uses no knife." (*Nelson* v. *State Board of Health,* 108 Ky. 769, at p. 777 [50 L. R. A. 383, 57 S. W. 501, 504].) "A method of treating diseases of the human body without the use of drugs. . . . '' (*Parks* v. *State,* 159 Ind. 211, at p. 229 [59 L. R. A. 190, 64 N. E. 862, 869].) "As a remedy a form of manipulation is used." (Century Dictionary.) From the foregoing and from the very comprehensive history of the practice of osteopathy written by Mr. Justice Wilbur of our own supreme court in *In re Rust,* 181 Cal. 73 [183 Pac. 548], it appears that under the present

classification there can be no doubt that one holding an osteopath's license issued prior to the act of 1913, or subsequent thereto on the basis of a previously secured license from another state, would, if originally licensed in this state since the act of 1913, be licensed as a "drugless practitioner." As section 21 of the act of 1913 provides: "Nothing in this act shall be construed to prohibit the practice by any person holding an unrevoked certificate heretofore issued under or validated by any medical practice act of this state, *but all such certificates may be revoked in the same manner and upon the same grounds as if they had been issued under this act*" (italics are ours), it is manifest that the proceedings for the revocation of a reciprocity certificate must be had under the provisions of the section under which such certificate would have been issued if originally issued. under the provisions of this act.

We think, therefore, that the proceedings were properly brought under subsection 9 and that the decision of the board of medical examiners should not have been annulled.

The judgment of the superior court is reversed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 16, 1922.

All the Justices concurred, except Waste, J., who did not vote.